61 So.2d 89

**ELLERBEE v. ATLANTIC COAST LINE R. CO.**

6 Div. 220.

Supreme Court of Alabama.

Aug. 27, 1952.

Rehearing Denied Nov. 6, 1952.

Graham, Bibb, Wingo & Foster, Birmingham, for appellee.

---

Hewlett, Dennis, Bowden & Barton, Atlanta, Ga., and Jackson, Rives & Pettus, Birmingham, for appellant.

LAWSON, Justice.

This is a suit by M. C. Ellerbee against the Atlantic Coast Line Railroad Company, brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries alleged to have been sustained as the result of the derailment of a motor car on which Ellerbee was riding while in the performance of his duties as a section foreman for the railroad company.

The derailment occurred in Georgia. The right of plaintiff to prosecute his suit in Jefferson County, Alabama, was upheld in Ex parte State ex rel. Atlantic Coast Line R. Co., 254 Ala. 28, 47 So.2d 251.

The case went to the jury on Counts 3 and 4 of the complaint and the defendant's plea of the general issue in short by consent.

■ The gist of an action under the Federal Employers' Liability Act is negligence. Alabama Great Southern R. Co. v. Davis, 246 Ala. 64, 18 So.2d 737; Roberts v. Alabama Great Southern R. Co., 250 Ala. 629, 35 So.2d 509; Atlanta, B. & C. R. Co. v. Cary, 250 Ala. 675, 35 So.2d 559; Reynolds v. Atlantic Coast Line R. Co., 251 Ala. 27, 36 So.2d 102; Louisville & N. R. Co. v. Green, 255 Ala. 642, 53 So.2d 358.

Count 3 of the complaint charges negligence in the following language: " * * * and the plaintiff avers that his said wounds, injuries and damage were the proximate consequence of or resulted in whole or in part from the negligence of the officers, agents or employees of said defendant or by reason of a defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, tracks, roadbed or other equipment." Count 4 charges negligence in practically the same language.

Ellerbee had been in railroad work nearly all of his adult life and had been with defendant and its predecessor companies for twenty-five years or more. For approximately twenty-five years prior to March 1, 1948, he lived in Manchester, Georgia, where he worked as a section foreman. On or about March 1, 1948, he was transferred to Brunswick, Georgia, where he continued in the same service. He had been working on his new job about sixty days when the derailment occurred, on April 30, 1948.

Ellerbee had at his disposal for use in the performance of his duties a motor car and a "push" car. On April 30, 1948, Ellerbee and his crew of five men were sent to replace some rails at the "Pulpwood Switch" about two or three miles north of Brunswick. They rode to the job site on the motor car, which was pulling the "push" car. They carried several rails, some switches and necessary tools and equipment. After the work had been completed, the rails and switch which had been removed were loaded on the motor car and the push car. Ellerbee and his crew then began their return trip to Brunswick. The rails were resting on both cars. The motor car was in the lead. Before reaching Brunswick and while traveling at a speed of from eight to ten miles an hour, the derailment occurred.

Ellerbee gave testimony going to show that the derailment was caused by the defective track, specifically, a high joint, referred to by the witnesses as a "snake-head" joint. There was evidence on behalf of plaintiff tending to show that the "snake-head" joint resulted from the defendant's failure to use the proper kind of angle bars or irons in connecting the rails. Neither Ellerbee nor any of his witnesses gave testimony tending to show that the injury which he claimed to have suffered resulted from the negligent manner in which any servant, agent or employee of defendant operated the motor car or loaded the rails and switch thereon. He did introduce in evidence the answer of defendant to interrogatories. In answer to an interrogatory as to the cause of the derailment, the defendant stated: "The motor car was caused to be derailed on April 30, 1948 because of the negligent and improper manner in which Mr. Ellerbee directed the loading of the rails and material on the motor car and the attached push car, and the use he directed be made of the vehicles so improperly loaded. After the derailment, the wheels which derailed were put back on the track and the car and the crew proceeded on to Brunswick."

Evidence for the plaintiff was to the effect that he suffered a broken back as a result of the derailment.

The defendant undertook to show that the track was not in a defective condition and that the cause of the derailment was not due to the manner in which the track was constructed and maintained. There was much evidence offered by the defendant going to show that Ellerbee actually received no injury as the result of the derailment and that the injury to his back had been suffered long prior to the date of the accident.

There was a jury verdict in favor of the defendant. Judgment was in accord with the verdict. Plaintiff's motion for new trial having been overruled, he has appealed to this court.

Assignments of error relate to the trial court's action in giving two written charges at the request of the defendant and rulings on the admission and exclusion of evidence.

Plaintiff below, appellant here, complains of the trial court's action in giving Charges A and B at the defendant's request. These two charges are very similar. Charge B, which is the broader of the two, reads as follows: "The Court charges the jury that if you are reasonably satisfied from the evidence in this case that the sole proximate cause of the derailment of the motor car on which M. C. Ellerbee was riding on the occasion in question was the manner in which the said motor car was loaded and being operated at that time, then your verdict must be for the defendant."

We pretermit any consideration of the question as to whether under the pleading and evidence in this case the giving of Charges A and B would constitute reversible error if the case had not been tried on the single issue of whether the defendant was guilty of negligence in the manner in which the track was constructed and maintained.

From the institution of the suit, the opening statement to the jury by counsel for plaintiff, through the course of the trial proceedings, and down to and including plaintiff's closing argument to the jury, plaintiff's counsel by statements expressed made it plain to the court that plaintiff was basing his right to recover on the sole contention that plaintiff's injury was proximately caused by the negligent manner in which the track was constructed and maintained.

In opening statement to the jury at the beginning of the trial, one of counsel for plaintiff stated:

"Mr. Ellerbee, the plaintiff, has commenced this action against his former employer charging that his former employer failed to abide by and conform to the provisions of the statute I have just read to you. He says in one of his counts that his employer negligently failed to give him a safe place to work, and that as a result of that failure he received the injuries for which this suit was brought; and he says, too, that he was hurt because of a negligent failure on the part of his employer to repair a track causing him injury for which this suit is brought. That is the basis of Mr. Ellerbee's complaint in this suit, and that is the paper that commences this suit."

In this opening statement to the jury one of counsel for plaintiff further stated:

"We expect the evidence to show you that when they got about four miles from Brunswick, Georgia proceeding at a reasonable rate of speed near mile post 538, I think—Mr. Ellerbee will, describe the place—this vehicle that he was riding it hit a rough spot where there is two of the rails coming together and as a result of hitting this rough spot the little motor car was derailed and Mr. Ellerbee was thrown over near the edge of the rail and thrown over the side and he received as a result of that derailment very serious injuries."

In reply to the statement made by one of counsel for defendant to the jury at the beginning of the trial, counsel for plaintiff said:

"* * * it is true that this section of track where this accident occurred was under Mr. Ellerbee's jurisdiction and we expect the evidence to show that Mr. Ellerbee had been transferred to the Brunswick Division of this railroad about two months before he was hurt and that the unsafe condition of this track was observed by him and reported to his superior and that they were engaged at that time in repairing this rough stretch of track, but they had not gotten to the point where the accident occurred because of instructions of Mr. Ellerbee's superior to do this repair work only when he was not engaged in doing other work which his

superior regarded to be more important."

As a witness, plaintiff explained in detail the rough condition of the track at the point where the derailment occurred. As before indicated, he gave testimony going to show that the rails were joined together by inferior angle bars or angle irons. On the other hand, plaintiff testified in effect that the rails which were being transported were properly loaded and that the motor car was traveling at a normal speed, not fast.

After the evidence was all in, counsel for plaintiff in opening argument to the jury pointed out that plaintiff as a witness had told the jury how the accident had occurred. Counsel summarized plaintiff's contention in this language: " * * * and he said it occurred because there was a snake head and that caused this derailment * * *." In closing argument to the jury counsel for plaintiff used these words: "Now, gentlemen of the jury, the only question here on this is were they negligent because they used the wrong type of tie plates or angle irons or whatever they call them."

In giving Charges A and B at the request of the defendant, the trial court actually did no more than counsel for plaintiff had done in their statements made to the jury at the beginning of the trial and in their summation at the close of the evidence.

 In such circumstances, we do not think the plaintiff should be permitted to avail itself in this court of an error (if any) into which he led the trial court. It is a well-established doctrine that a party may not avail himself of error into which he has led the court. This is called invited error. There is another principle which we think is applicable here. A case will not be reviewed here on a theory different from that on which the trial was had. Seaboard Air Line Ry. Co. v. Lowe, 223 Ala. 542, 137 So. 448. See Walker v. Walker, 245 Ala. 154, 16 So.2d 190; Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 167 S.W. 433; Cantley v. Missouri-Kansas-Texas R. Co., 353 Mo. 605, 183 S.W.2d 123.

 Reversible error is not made to appear in the action of the trial court in sustaining the defendant's objection to the following question propounded to plaintiff by his counsel: "I will ask you, if in your opinion this regular type iron was safer and better than this so-called ever tight?" Obviously this question calls for expert evidence. Although the record shows that plaintiff had been a section foreman for many years and was familiar with railroad tracks, we are not willing to say that his experience was shown to have been such as to qualify him to testify as an expert in regard to the matter sought to be elicited by this question. We have often said that the question of whether a witness is competent to testify as an expert addresses itself to the discretion of the trial court. Moreover, an examination of the plaintiff's testimony shows that the answer which this question sought to elicit was already in evidence. Hence, error, if any, in sustaining the objection to the question would be error without injury.

 Defendant's witnesses Turner and Chapman were shown to be skilled and experienced in respect to track construction and track conditions. The trial court did not err in permitting these witnesses to express the opinion that the track at the point where the derailment occurred was in a safe condition for the use to which it was put. Northern Alabama R. Co. v. Shea, 142 Ala. 119, 37 So. 796; Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 So. 604; McNamara v. Logan, 100 Ala. 187, 14 So. 175; Southern Coal & Coke Co. v. Swinney, 149 Ala. 405, 42 So. 808; Atlantic Coast Line R. Co. v. Hardwick, 239 Ala. 58, 193 So. 730. See 146 A.L.R. 5, Annotation on subject "Safety of condition, place or appliance as proper subject of expert or opinion evidence in tort actions."

The judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER, SIMPSON, and GOODWYN, JJ., concur.