(79 South. 605)

PORTER v. LOUISVILLE & N. R. CO.
(6 Div. 495.)

(Supreme Court of Alabama. June 20, 1918.)

1. WITNESSES ⊙⇒270(2)—CROSS-EXAMINATION—DISCRETION OF COURT.
Where witness was testifying for plaintiff for the first time at the second trial, question on cross-examination, how plaintiff found out the witness knew anything about the accident, was within the discretionary latitude of cross-examination allowed upon immaterial matters.

2. EVIDENCE ⊙⇒471(19)—MATTERS OF FACT OR CONCLUSION—DISCRETION OF COURT.
In action for death under locomotive, witness could say whether the engineer could have seen deceased.

3. APPEAL AND ERROR ⊙⇒1048(5)—HARMLESS ERROR.
Error, if any, in permitting question whether engineer of locomotive which killed deceased could have seen deceased, was harmless where the witness answered that he did not know.

4. WITNESSES ⊙⇒237(1)—QUESTIONS ASSUMING FACTS.
In action for death under locomotive, question, addressed to the engineer, whether he saw deceased stop in front of the engine, was rele-

vant and material and did not assume that deceased stopped in front of engine.

5. RAILROADS ⊙⇒397(1)—INJURIES TO TRESPASSERS ON TRACK—EVIDENCE—ADMISSIBILITY.
In action for death under locomotive, it was proper to ask the engineer whether he knew that a man was struck at the time deceased was killed.

6. WITNESSES ⊙⇒379(11) — IMPEACHMENT — STATEMENTS.
In action for death under locomotive, a written statement, made immediately after the accident by one of claimant's witnesses, which involved him in material contradictions, was admissible.

7. WITNESSES ⊙⇒392(1)—IMPEACHMENT—INCONSISTENT STATEMENTS.
In action for death under locomotive, written statement, made immediately after the accident by one of plaintiff's witnesses, that the engineer could not have seen deceased, was admissible to contradict the witness.

8. EVIDENCE ⊙⇒582(4)—BILL OF EXCEPTIONS OF FORMER TRIAL.
In action for death under locomotive, bill of exceptions reserved on former trial to show what the engineer then testified was not admissible.

9. EVIDENCE ⊙⇒575—TESTIMONY AT FORMER TRIAL.
Testimony of witnesses at a former trial in any event is admissible only to impeach him, and not as original evidence.

10. EVIDENCE ⊙⇒581—TESTIMONY OF FORMER TRIAL—ABSENCE OF WITNESS—DILIGENCE.
Plaintiff seeking to introduce record of testimony of former trial had the burden of showing diligence to find the witnesses, and could not inquire of witnesses what efforts were made by defendant to find the absent witness, since he could in no event rely upon such efforts.

11. APPEAL AND ERROR ⊙⇒677—SCOPE OF REVIEW—RECORD.
Error cannot be predicated on the exclusion of a return of a subpœna for a witness when the bill of exceptions does not show what the return was.

12. EVIDENCE ⊙⇒581—TESTIMONY OF FORMER TRIAL—ABSENCE OF WITNESS—DILIGENCE.
Testimony of two witnesses on vague information or belief that an absent witness may have been without the state, and issuance of a subpœna to one county the return of which was not shown in the record, did not show sufficient diligence to warrant the introduction in evidence of the testimony of such witness at a former trial.

13. APPEAL AND ERROR ⊙⇒1060(1)—HARMLESS ERROR.
In action for death of trespasser when struck by locomotive, error, if any, in excluding statement of plaintiff's counsel to the jury that the railroad would much rather try the engineer for murder than to have a suit for alleged negligent killing, was harmless.

14. RAILROADS ⊙⇒387—INJURIES TO PERSONS ON TRACK—SUBSEQUENT NEGLIGENCE.
If deceased knew of approach of the engine and miscalculated the distance, he was guilty of subsequent negligence proximately contributing to his death.

15. TRIAL ⊙⇒251(8) — INSTRUCTIONS — CONFORMITY TO PLEADINGS.
In action for death of trespasser when struck by locomotive, where there was no plea of subsequent contributory negligence, instruction that, if deceased never knew anything of his danger, he was not guilty of negligence constituting a defense, was properly refused as an abstraction.

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

16. RAILROADS ☞398(3)—INJURIES TO TRES-
PASSERS ON TRACK—NEGLIGENCE—PRESUMP-
TIONS.

Mere fact ·that fireman was sitting on his
side of the engine which was moving backward
did not furnish sufficient basis for inference that
he saw the danger of deceased and failed negli-
gently to notify the engineer thereof.

17. RAILROADS ☞369(3)—INJURIES TO TRES-
PASSERS ON TRACKS—LIABILITY.

If engineer of backing locomotive did not
become aware of danger of deceased, a trespass-
er on the track, until after he was struck, plain-
tiff could not recover.

18. RAILROADS ☞390 — INJURIES TO TRES-
PASSERS ON TRACKS—LAST CLEAR CHANCE
DOCTRINE.

A railroad is not liable for death of tres-
passer on its tracks under the last clear chance
doctrine until it is shown that the engineer be-
came aware of deceased's danger and failed to
use, or negligently used, the means at hand to
prevent injury after obtaining such knowledge.

19. RAILROADS ☞391(4) — INJURY TO TRES-
PASSERS ON TRACKS—NEGLIGENT OR WILL-
FUL INJURY.

Plaintiff cannot recover for death of deceas-
ed on track under theory of wanton or willful
negligence unless the engineer was actually
aware of his danger and should have known
that deceased did not know of the danger and
thereafter failed to use means at hand to avoid
the injury.

Appeal from Circuit Court, Blount Coun-
ty; J. E. Blackwood, Judge.

Action by John· Porter, as administrator
of the estate of M. S. Porter, against the
Louisville & Nashville Railroad Company,
for damages for the death of his intestate.
Judgment for defendant, and plaintiff ap-
peals. Affirmed.

The following are the assignments of er-
ror referred to:

(2) Overruling plaintiff's objection to the fol-
lowing question to the witness Duke: "How
did he find out you knew anything about it?"

(6) Overruling plaintiff's objection to the fol-
lowing question propounded to the witness Tal-
ford: "Did you know a man was struck at that
time?"

(7) Overruling motion of plaintiff to exclude
statement of witness T. L. Green: "I was
standing on the ·bottom steps of the agent's of-
fice at Blount Springs afternoon March 4, 1913,
about 3 o'clock, when Louisville & Nashville
engine headed north had cut loose from its train
south of the depot, and had gone up on the house
track north of the station, and had moved a
stock car up there a short distance, and cut loose
from it, and was backing down towards the sta-
tion on the house track. No one on the back
end, and I don't know whether bell was ringing
or not. A freight train headed south had stop-
ped at the water tank north of the station and
taken water and pulled down, and W. S. Porter
caught side of about fifth car from engine of
this train, and rode down to a point opposite
agent's office and jumped off, arid started across
house track about 15 feet in front of engine
backing up, and turned and started down mid-
dle of track. I saw the engine was about to
strike him, and hollered at him, and the por-
ter was hollering at him; but he was struck
and dragged about 75 or 100 feet. The engi-
neer was the only one I saw on the engine. He
could not have seen Porter after he got on the
track. I saw a whisky bottle which was found
about where Porter ·was struck."

(12) In sustaining defendant's objection to the
following questions propounded to witness John

Taylor: "Did he testify in backing the engine
and looking back for a man at the point of col-
lision if a man had come from my side of the
track and stopped in the track, I could have
seen him all the way up to my engine, if I had
been looking?"

(14) In sustaining defendant's objection to the
following question propounded to witness John
Crane: "Do you know whether any effort was
made by defendant to find him" (referring to
witness Jones)?

Charge 5, refused to plaintiff, is as fol-
lows:

If you believe in this case, you cannot find
that plaintiff's intestate was himself guilty of
any subsequent negligence on his part contribut-
ing proximately to his injuries and death, after
said intestate himself became aware of his dan-
ger from the then approaching train.

(8) If, upon the consideration of the whole
evidence, you are reasonably ·satisfied therefrom
that plaintiff's intestate himself never knew
anything of his danger, from the then approach-
ing engine which subsequently struck and kill-
ed him, if you find he was struck and killed,
then in that event I charge you that said in-
testate was not himself guilty of any negli-
gence which would constitute any defense to any
count of the complaint.

(22) If the jury believe from the evidence
that the engineer Talford did not see Porter, the
deceased, on the track, or become aware of
Porter's danger of being injured by the engine
until after he was struck, you should return a
verdict for defendant.

(23, 24, 25) Same as 22.

(27) From the evidence in this case you can-
not find for plaintiff on account of any wrongful
conduct or omission of the fireman Hamm.

(28) You cannot find for plaintiff under the
second count of the complaint on account of any
acts or omission of the fireman Hamm.

(29) Same as 27.

(30) Before you can find for plaintiff in this
case, you must be reasonably satisfied from the
evidence: First, that the engineer Talford be-
came aware of the danger of deceased being
struck by an engine; second, that thereafter
the engineer failed to use the means he had at
hand on the engine to prevent injuring Porter,
or that he used the means at hand negligently;
and third, that such failure on the engineer's
part, or such negligent use of the means at
hand, was either consciously done by him, or
negligently done by him after knowledge of in-
testate's peril.

(31) Unless you are reasonably satisfied from
the evidence that the engineer Talford became
actually aware of the danger of the intestate
being struck by the engine, and should have
known in the exercise of due care on his part
that the intestate Porter was unaware of the
approach of the engine, and that thereafter
the engineer consciously omitted to do something
that he ought to have done to prevent striking
the intestate, or consciously did something he
ought not to have done in that regard, you can-
not find for plaintiff under the first count of the
complaint.

(32) Unless reasonably satisfied from the evi-
dence that the engineer actually became aware
of the peril of plaintiff's intestate on the track
before he was struck by the engine in time to
have kept from striking him by the use of the
appliance at hand on the engine in the manner
they are used by engineers of the highest skill,
and that thereafter the engineer either con-
sciously or negligently failed to use the applianc-
es at hand to prevent Porter's injury, your ver-
dict should be for defendant, and this would be
true regardless of whether the bell on the engine
was being rung or the whistle was being blown.

(33) If you believe from the evidence in this

case that the engineer did not see plaintiff's intestate on the track, and did not become aware that said intestate was in danger of being struck by the engine until it was impossible to have prevented the intestate being struck by the engine, your verdict should be for defendant.

Erle Pettus, of Birmingham, for appellant. Geo. W. Jones, of Montgomery, Ward & Weaver, of Oneonta, and Frank Dominick, of Birmingham, for appellee.

SAYRE, J. On a former appeal in this case we made a statement of the general aspects of the case to which we now refer. L. & N. R. R. Co. v. Porter, 196 Ala. 17, 71 South. 334. We reproduce as it was written what we then said with respect to the true issues in the case:

"Clearly, the deceased was a trespasser upon the track, and defendant owed him no original duty to know he was there; but if the engineer was apprised of the presence and peril of the deceased upon the track in time to save him by the prompt use of any means at his command, and thereupon negligently, willfully, or with conscious indifference to the probable consequences of the situation thus known to him, omitted to do what he might have effectually done to save deceased, then defendant was liable under the first or second count of the complaint, according as the jury may have found that the engineer intended to kill plaintiff's decedent or was consciously indifferent to that result on the one hand, or that his omission was the result of mere inadvertence on the other. These were the true issues made by the pleading and the evidence, and to these questions of fact the consideration of the jury should have been limited."

On the second trial the issues were so limited. The assignments of error now presented for review are based upon rulings on evidence and the giving or refusal of special charges requested by the parties. We consider seriatim those assignments of error which are urged in argument, numbering them as they are numbered on the record.

[1] 2. In view of the fact that the witness was testifying for plaintiff for the first time on the trial, the question here assigned for error was well within the discretionary latitude of the cross-examination allowed upon immaterial matters. Carmichael v. State, 197 Ala. 185, 72 South. 405.

[2, 3] 4. There was no error in overruling appellant's objection to the question propounded by defendant to its witness Higgins:

"When you saw Porter [the deceased] get on the track and the engine backing [as the witness had testified], do you know whether or not he [the engineer] could see Porter?"

This court has ruled upon the propriety of questions like this. Central of Georgia v. Hyatt, 151 Ala. 355, 43 South. 867. Another very good reason why reversible error cannot be predicated of this ruling is that the witness answered that he did not know.

[4] 5. The question defendant was allowed to ask its witness Talford:

"Tell the jury whether or not you saw Porter jump off the freight train [moving along a parallel track] and stop in front of the engine."

Talford was defendant's engineer charged with negligence, and his negative answer was patently relevant and material. The question no more assumed that deceased stepped in front of the engine than it assumed that the witness saw deceased jump from the freight train. It assumed nothing. It asked for the witness' statement as to the facts.

[5] 6. This assignment is argued as if the trial court had allowed the witness to repeat the incompetent statement of another. Nothing of the sort occurred. The question asked for relevant and material facts and was properly allowed.

[6] 7. One T. L. Green testified for the plaintiff. He had made a statement in writing immediately after the accident which resulted in the death of plaintiff's intestate, and that statement, after being duly submitted to the witness and identified by him, was admitted in evidence over plaintiff's objection that it was incompetent, irrelevant, immaterial, and illegal. Plaintiff's subsequent motion to exclude the statement as a whole was overruled and is assigned for error. This ruling was very different from that held for error in Helton v. Ala. Mid. R. R. Co., 97 Ala. 275, 12 South. 276. The statement here in question involved the witness in material contradictions, and the motion to exclude was properly overruled.

[7] 8. Nor was there error in overruling plaintiff's motion to exclude that part of the statement to the effect that the engineer could not have seen deceased after he stepped on the track. This statement, if made upon the witness stand, would have been competent. Central of Georgia v. Hyatt, supra. Inferentially, we think, it involved the witness in a material contradiction, or, if that be doubted, then it was an iteration of the witness' testimony. At any rate, to recur to the statement as a whole, there was no introduction in evidence of a statement devoted exclusively to the mere inconsistent theories and opinions of the witness, as was the case in Helton v. Ala. Mid. R. R. Co., supra.

[8] 9. There would have been no error in refusing to admit the bill of exceptions reserved on the former trial, to show what the witness Talford then testified to. Central of Georgia v. Carleton, 163 Ala. 62, 51 South. 27.

[9] 11. No error was committed in excluding the affirmative answer of the plaintiff's witness Porter to the question:

"State whether or not he [Talford] testified [on the former trial] substantially that the fireman was on his side looking."

This testimony was offered for the purpose of impeaching the witness Talford. We do not find that the attention of the witness Talford had been directed to that part of his testimony, as to which plaintiff sought to impeach him, with the particularity necessary in laying a predicate for impeachment,

nor, indeed, that on the last trial he testified to anything in conflict with his testimony on the former trial. This reproduction of the witness' testimony on the former trial could only have been competent in any event to impeach the witness. In no event could it have been received as original evidence of the fireman's knowledge of the presence and peril of plaintiff's intestate upon the track, nor do we assume that it was offered for that purpose.

12. This is disposed of on the same reasons mentioned in justification of the court's ruling specified in the eleventh assignment of error.

[10] 14. This assignment furnishes no sufficient reason for reversing the judgment. Plaintiff hardly went far enough to develop a material ruling—plaintiff did not ask what effort had been made to find the witness. But, aside from this, plaintiff, proposing to introduce the testimony given by the witness Jones on the former trial, assumed the burden of showing to the court that he had exercised due diligence to find the witness. Pope v. State, 183 Ala. 61, 63 South. 71. He had no right to rely upon the efforts, diligent or otherwise, of his adversary.

[11, 12] 15, 16, 17, 18. These assignments of error are based upon rulings by which the trial court refused admission to the testimony of the absent witness Jones, excluded the sheriff's return, and the sheriff's statement, as a witness, that he believed the witness Jones was out of the state; he believed it was not marked up, he was not positive. As for the return, the bill of exceptions does not show what it was, and error cannot be predicated of its exclusion, while, upon the case as a whole, the evidence was patently insufficient to justify the admission of the testimony on the former trial on the theory that plaintiff had exercised due diligence to procure the attendance of the absent witness. Indeed, while two witnesses testified to their most vague information or belief that the absent witness may have been without the state, the only effort to locate him consisted in the issue of a subpoena to one county, the return upon which is not shown by the record. The court committed no error in excluding all the evidence offered on this subject or in rejecting the proffered testimony of the absent witness.

[13] 19. There was no error to reverse in excluding the statement made by counsel to the jury on the argument of the case:

"The railroad would much rather try him [referring, we presume, to defendant's engineer Talford] for murder than to have a suit here to make them pay for the negligent killing of the intestate."

There was, of course, no evidence to sustain the assertion, and while it may, possibly, have been permitted to counsel to infer such a state of mind in the defendant, it is inconceivable that by this ruling of the court plaintiff was deprived of any advantage to which he was legitimately entitled in presenting his case to the jury. The court pursued the safe course.

[14, 15] 20, 21. Charge 5, requested by plaintiff, was correctly refused. There was evidence from which the jury might have inferred that plaintiff's intestate knew of the approach of the engine and tender that killed him and miscalculated the distance. In that event plaintiff's intestate was guilty of negligence proximately contributing to his death, and his negligence was "subsequent," though there was no plea raising the issue of subsequent contributory negligence on the part of plaintiff. And because there was no such plea charge 8 was also refused without error. It was an abstraction which could serve no purpose in the case. The pleadings remained as they were upon the first trial, and the record shows that the case was submitted to the jury on the issues stated in the opinion on former appeal; in other words and in short, the court submitted the case to the jury with instructions that, if the engineer became aware of the presence and peril of plaintiff's intestate upon the track and thereafter failed to make proper efforts to prevent injuring him, then plaintiff was entitled to recover, and this statement—pretermitting the difference between the counts which was explained to the jury—covered, in brief, the law of the case.

[16, 17] 22, 23, 24, 25, 27, 28, 29. The charges to which these assignments refer were properly given to defendant. They followed the law as stated upon the former appeal. Error is affirmed of them for the sole reason that, under the evidence, as appellant suggests, the fireman may have been guilty of negligence; but we find no evidence which would warrant that conclusion. The mere fact that the fireman was sitting on his side of the engine, which was moving backward, did not furnish a sufficient basis for an inference that he saw the danger of plaintiff's intestate and failed negligently to communicate the fact to the engineer.

[18] 30. The charge made the subject of this assignment was not erroneously given. The engineer could do no more than use the means at hand. The charge which the court said should have been given in Brown v. St. L. & S. F. R. R. Co., 171 Ala. 310, 55 South. 107, cited by appellant (charge 10 in that case), asserted a less degree of care. It asserted in effect only that it was the duty of the engineer, having discovered a person in a position of peril on the track, "to use some means to avoid the injuries which would have suggested themselves to the mind of an ordinarily prudent man under the same circumstances."

[19] 31. This assignment discloses no error. The engine was moving slowly—hardly

much faster, under any of the evidence, than a man could walk. Unless the engineer was actually aware of intestate's danger, and, as a reasonably prudent agent, should have known that intestate was unaware of the approach of the engine, and thereafter failed in some one of the particulars specified in the charge, plaintiff should not have been allowed to recover under the wanton or willful count of the complaint. 196 Ala. 17, 71 South. 334.

32, 33. The charges given for defendant, and set out in these assignments, stated the law as it had been stated on the former appeal. 196 Ala. 17, 71 South. 334.

Finding no error, the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.